Eastern Dist.
February, 1837.

CITY BANK OF
NEW-ORLEANS
vs.
GIRARD BANK.

---

## CITY BANK OF NEW-ORLEANS vs. GIRARD BANK.

### APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where a bill is paid *supra* protest, for the honor of the drawer, he can only recover of the *drawee*, the costs of protest for non-acceptance.

Where an agreement contains a dissolving condition on notice given by one of the parties; and before the expiration of the notice, the other desiring to continue it, proposes some new modifications which are accepted by the adverse party, two days after the notice to dissolve had expired: *Held*, that this was a waiver of his right of considering the agreement at an end, and that he was bound, for bills drawn in the meantime, under the agreement.

The obligation on the drawee, to pay a *check* and a bill of exchange, are the same. Both contain a request from the drawer to the *drawee*, to pay a sum of money to a third person, in whose favor the check or bill is drawn.

When there is no question of fact, and the sole question being the con- <span style="float:right">EASTERN DIST.</span>
struction of an agreement, or written instrument, of which the court is *February*, 1837.
the legitimate judge, although the verdict be set aside, the case will not <span style="float:right">CITY BANK OF</span>
be remanded for a new trial. <span style="float:right">NEW-ORLEANS</span>
<span style="float:right">*vs.*</span>
The acts of the legislature, giving damages on protested bills and notes, <span style="float:right">GIRARD BANK.</span>
only relate to those due by the drawers and endorsers, and is silent, in
regard to those which are claimed from drawees and acceptors.

But when damages are claimed by the drawer from the drawee, who was
bound to honor the draft, the latter must indemnify the former for the
damages resulting from the dishonor, *i. e.*, whatever *he* has had to pay
the holder.

This is an action to recover from the defendants, the sum
of two thousand six hundred and ninety dollars, for damages,
interest and costs, on four protested bills of exchange, drawn
by the plaintiffs on the defendants, in pursuance of a special
agreement between them, according to a detailed state-
ment annexed to the petition.

The defendants pleaded a general denial.

The tenor of the agreement, under which the bills of
exchange in question were drawn, is set out in the opinion
of the court, together with the several dates of the bills, and
the correspondence between the parties, which was produced
in evidence.

The case was submitted to a jury in the District Court,
who returned a verdict of thirty dollars and forty-three cents,
for the plaintiffs, and from the judment rendered thereon,
they appealed; having first made an unsuccessful attempt
to obtain a new trial.

*De Armas*, for the plaintiffs.

*Strawbridge*, for the defendants, made the following points:

1. Under no circumstances can the first item of the account
be allowed. The draft was paid by the plaintiffs' agent,
and no damages were incurred. *Nolte & Co.* vs. *Their
Creditors.* 7 *Martin, N. S.*, 9.

EASTERN DIST.
February, 1836.

CITY BANK OF
NEW-ORLEANS
vs.
GIRARD BANK.

2. Whatever may have been the character of the first agreement entered into, on the 28th of May, 1833, the plaintiffs were notified that the agreement must end, and six months after they were notified, it had expired.

3. A new arrangement was then made, by which it was expressly agreed, that each party must realize the funds in the hands of the other as they could. No more facilities in drawing were to be allowed.

4. The draft in favor of Nicholson, drawn by the defendants, furnishes no proof of the understanding under the new agreement. It was drawn under the first arrangement, viz: October 25th, 1833; whereas the agreement did not expire until the 28th of November, and the new proposal was accepted on the 30th of November, 1833.

5. The verdict of the jury is not to be disturbed.

*Martin, J.,* delivered the opinion of the court.

By a contract entered into, the 27th July, 1832, the defendants agreed:

1st. To transfer the stock of the plaintiffs, and pay the dividends thereon, free of charge, and receive the instalments in like manner; to negociate and sell the sterling bills, remitted to them by the plaintiffs; to collect in Philadelphia, Maryland and Virginia, and many banks, in the East and West, free of charge; to redeem the plaintiffs' post and bank notes, payable in Philadelphia; pay their checks, and if not in funds, discount to the amount of one hundred thousand dollars, from the paper they may have for collection. The plaintiffs agree to collect in the same manner, any bills or notes, which the defendants may remit to them on New-Orleans, Natchez and Mobile. On the 28th of May, 1833, the defendants informed the plaintiffs, their agency in receiving transfers of the plaintiffs' stock, &c., had become so onerous, that the original contract could no longer be continued in force, unless the plaintiffs would consent to pay a yearly sum of one thousand dollars to the defendants, and on their refusing to do so, the defendants would avail themselves of a clause in the original contract,

which authorized either party to put an end thereto, on giving six months' notice. The plaintiffs consented to the allowance of one thousand dollars, required by the defendants, on condition that the exchange sent to the plaintiffs for collection, should not, as before, be considered as a set-off against any exchange the plaintiffs may for- ward to the defendants for collection; each of the parties adopting to get their funds, such measures as they may respectively think fit. On the 30th of November, 1833, the defendants declared their acquiescence to the proposition of the plaintiffs. The plaintiffs afterwards drew four bills on the defendants, which were protested; and the present action is brought to obtain compensation for the injury sustained by the plaintiffs, in consequence of the return of those bills. The defendants pleaded the general issue. The plaintiffs had a verdict and judgment for thirty dollars and forty-three cents, and they appealed. Our learned brother, in the District Court, has not favored us with any of the reasons on which the judgment is founded, except the finding of the jury. He overruled a motion for a new trial, claimed on the ground that the verdict of the jury was contrary to law and evidence. The record shows that the bills were drawn and protested, and that one of them was paid by a friend of the plaintiffs, for their honor. The counsel for the defendants and appellees has contended, that as to the bill which was thus paid, the plaintiffs have sustained no damage.

2d. That whatever may be the character of the first agreement, the plaintiffs were informed that it must end six months after they were notified. An arrangement was then made, by which it was expressly agreed, that each party must realize the fund in the hands of the other as they could. No more facilities in drawing.

3d. A draft of the defendants on the plaintiffs, of the 25th October, 1833, furnishes no proof of the understanding, under the new agreement; it was drawn under the first arrangement; whereas the old agreement did not not expire

EASTERN DIST.
*February,* 1837.

CITY BANK OF NEW-ORLEANS
*vs.*
GIRARD BANK.

*Where a bill is paid supra protest, for the honor of the drawer, he can only recover of the drawee the costs of protest for non-acceptance.*

*Where an agreement contains a dissolving condition, on notice given by one of the parties, and before the expiration of the notice, the other desiring to continue it, proposes some new modifications, which are accepted by the adverse party, two days after the notice to dissolve had expired: Held, that this was a waiver of his right of considering the agreement at an end, and that he was bound for bills drawn in the meantime, under the agreement.*

*The obligation on the drawee to pay a check and a bill of exchange are the same: both contain a request from the drawer to the drawee, to pay a sum of money to a third person, in whose favor the check or bill is drawn.*

until the 28th of November, and the new proposal was acccepted on the 30th.

I. It is clear, that as to the bill which was paid for the honor of the plaintiffs, they are entitled to no damages, except the costs of the protest for non-acceptance, if the bill was paid *supra* protest.

II. On the 14th of November, 1833, the plaintiffs informed the defendants of their assent to the demand of the defendant, of their allowance of a yearly sum of one thousand dollars. This assent, however, was burthened with a condition, which would have authorized the defendants to consider the original agreement at an end, on the 28th of the same month. They do not appear to have done so; for the two days after, to wit: on the 30th of November, they informed the plaintiffs, that the condition under which the assent was given, formed no obstacle to its acceptance. The defendants thereby waived the right which they had, of considering the original agreement at an end.

III. It is clear, that the draft of the 25th of October, 1833, drawn before the expiration of the six months, which followed the declaration of the defendants, of their wish to annul the agreement, was correctly drawn under it.

It appers to us, that the protested bills having been drawn, after the plaintiffs had received notice of the acceptance of their assent, with the condition they had annexed thereto, were correctly drawn on the original agreement, which the acquiescence of the defendants authorized them to consider as still in force, except in that part of it referred to in the condition. By this agreement the defendants undertook to redeem the plaintiffs' post and bank notes payable in Philadelphia, pay their *checks*, and if not in funds, discount to the amount of one hundred thousand dollars, from the paper they may have for collection.

We are unable to discover any difference between the obligation to pay a *check* or a *bill of exchange*. Both contain a request from the drawer to the drawee, to pay a sum of money to the person in whose favor the check or bill is drawn. A check drawn in New-Orleans, on London, would,

in our opinion, be a foreign bill. It remains to be considered, whether the condition annexed to the assent of the plaintiffs, modified the agreement, so as to absolve the defendants from the obligation of paying the plaintiffs' drafts. This condition was, that the exchange sent by either party to the other, would not, as before, be considered as a set-off against any exchange forwarded by the other. This relates only to moneys of either party collected by the other. No question of fact arising in this case, and the sole question being in regard to the proper construction of the agreement, of which a court is the legitimate judge, we have thought it our duty to forbear remanding the case for a new trial. On the merits, we are of opinion, that the defendants were bound to pay the drafts. The act of our legislature, which fixes the damages on protested bills of exchange, speaks only of those due by drawers and endorsers. It is silent with regard to those which are claimed from drawees. When damages are claimed from the latter by the holder, there may be some difficulty in assessing them; but when they are claimed by the drawer from a drawee, who was bound to honor the draft, it is clear that the latter must indemnify the former, for the damages resulting from the dishonor, i. e., whatever he is legally bound for to the holder.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, be annulled, avoided and reversed, and proceeding to give such a judgment, as in our opinion, ought to have been given below; it is ordered, adjudged and decreed, that the plaintiffs recover from the defendants the sum of one thousand and sixty-three dollars and seventy-one cents, with costs in both courts.

EASTERN DIST.
*February,* 1837.

CITY BANK OF
NEW-ORLEANS
*vs.*
GIRARD BANK.

When there is no question of fact, and the sole question being the construction of an agreement or written instrument, of which the court is the legitimate judge, although the verdict be set aside, the case will not be remanded for a new trial.

The acts of the legislature giving damages on protested bills and notes, only relate to those due by drawers and endorsers, and is silent in regard to those which are claimed from drawees and acceptors.

But where damages are claimed by the drawer from the drawee, who was bound to honor the draft, the latter must indemnify the former for the damages resulting from the dishonor, i. e. whatever *he* has had to pay the holder.