NEW ORLEANS, FEBRUARY, 1876.          189

Louisiana National Bank vs. Citizens' Bank of Louisiana.

No. 5842.

## LOUISIANA NATIONAL BANK OF NEW ORLEANS VS. CITIZENS' BANK OF LOUISIANA.

This suit is brought by the Louisiana National Bank of New Orleans vs. Citizens' Bank of Louisiana, to recover back the amount of a check drawn by the Bank of Mobile, purporting to be for twenty-seven hundred dollars, but which had been fraudulently raised from a smaller sum, and paid in ignorance of the forgery by the Louisiana National Bank, on which the check was drawn, and which had been taken on deposit by a third party and the amount paid out, upon the faith of the certification that it was "good," put upon the check by the Louisiana National Bank.

The obligation of the Louisiana National Bank to pay was the same, whether the instrument be called a check or bill. Clearly there was created an engagement of the bank to pay, and the bank became primarily liable to any innocent holder of the instrument for the amount thereof, which it had certified to be good. One of two innocent persons must suffer in this case. It would seem but just that he whose act has caused the loss should bear it.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins, J. Finney & Miller,* for plaintiff and appellee. *A. Pilot,* for defendant and appellant. *Clarke, Bayne & Renshaw,* for the New Orleans Savings Institution, called in warranty.

LUDELING, C. J. This suit is brought by the Louisiana National Bank against the Citizens' Bank to recover the amount of a check drawn by the Bank of Mobile, purporting to be for twenty-seven hundred dollars, but which had been fraudulently raised from a smaller amount, and paid, in ignorance of the forgery, by the Louisiana National Bank, on which the check was drawn. The answer of the Citizens' Bank is the general issue; it avers the check was deposited in the Citizens' Bank by and for account of the New Orleans Savings Institution, which institution is called in warranty. The answer of the Savings Institution is the general issue, and the special defense that the Savings Institution took the check on deposit, and paid out on account of it, upon the faith of the certification that it "was good" put upon the check by the Louisiana National Bank.

There is no dispute about the facts. The bill of exchange or check was drawn by the Bank of Mobile, but the amount thereof had been raised from twenty-seven dollars to twenty-seven hundred dollars *before* it was presented to the Louisiana National Bank of New Orleans for certification, and the New Orleans Savings Institution and the Citizens' Bank received and paid their money for it after the Louisiana National Bank had certified that it was "good."

Who must bear the loss? We do not consider it important to determine whether this be a check or a bill of exchange. In the case of City Bank vs. Girard Bank this court said: "We are unable to discover any difference between the *obligation to pay a check* or a *bill of exchange.* Both contain a request from the drawer to the drawee to pay a sum of

190 SUPREME COURT OF LOUISIANA,

Louisiana National Bank vs. Citizens' Bank of Louisiana.

money to the person in whose favor the check or bill is drawn. A check drawn in New Orleans on London would, in our opinion, be a foreign bill." 10 La. 567. Mr. Parsons says: "The check is always considered in England as a kind of inland bill of exchange, and this language is frequently adopted by American writers. They are much used here in drawing from one State upon houses of deposit in another, and small sums of money are frequently and very conveniently sent in this way; and it has even been suggested that these checks are foreign bills, and as such subject to protest and damages." 2 vol. Notes and Bills.

The obligation of the Louisiana National Bank to pay was the same whether the instrument be called a check or a bill. What was the effect of the acceptance or certification of the Louisiana National Bank? Clearly, it created an engagement of the bank to pay the check, and the bank became primarily liable to any innocent holder thereof for the debt which it had certified was "good."

Mr. Parsons says: "It is quite common in this country to present a check, not for payment, but to be marked or certified as good * * * and then it circulates or is transmitted as cash. Checks are often certified as good in England as well as here, and are there used and deposited as bills of the certifying bank. This marking or certifying is called in some cases 'acceptance,' and is said to have the same effect as acceptance." Parsons' Notes and Bills, vol. 11, p. 74.

The counsel for plaintiff says the general rule is, that he who pays in error is entitled to recover back the money so paid, and he admits the exception to this rule in favor of commercial paper, when the drawee has paid—but he says that the exception applies only when the *signature* of the drawer is forged, as the drawee was bound to know the signature of his correspondent, and whether he had funds, and that he guaranteed nothing else. It seems to us that tested by this rule the plaintiff can not recover.

We have already said that, by certifying the check "good," the bank bound itself *primarily* to *bona fide* subsequent holders—according to the agreement of the plaintiff, its act in certifying only estopped the bank from denying the signature of the drawer and the amount certified. That is all the plaintiff seeks to make the defendant responsible for. It is the signature and the amount of the check which give it value. It is of no consequence by whom the body of the instrument was written. It often happens that a check is written by a clerk or third person and signed by the drawer. One of two innocent persons must suffer in this case; it would seem but just that he whose act has caused the loss should bear it. Price vs. Neal, 3 Burrows, p. 1357; Bass et al. vs. Clive, 4 Maule & Selwyn 15; Smith vs. Mercer, 6 Taunton 81.

By certifying the check the bank bound itself to pay the amount

which it said was good, and upon this obligation alone the defendant parted with its money.

The Louisiana National Bank, by its cashier, wrote across the face of the check "good, Eug. F. Garcia." And with this certification, the check, as it was when certified, was acquired by the defendant in due course of its business; and the plaintiff paid it. We can not perceive how the plaintiff can contend with any semblance of right that the defendant was negligent in not inquiring from the Bank of Mobile if the check was genuine. If this inquiry had to be made by any one, it seems that it should have been made by the certifying bank before it gave currency to it and lulled suspicion and stopped inquiry by the responsibility of its certification that it was good.

In the case of the Merchants' Bank vs. State Bank, the Supreme Court said: " By the law merchant of this country the certificate of the bank that a check is good is equivalent to acceptance. It implies that the check is drawn upon sufficient funds in the hands of the drawee, that they have been set apart for its satisfaction, and that they shall be so applied whenever the check is presented for payment. It is an undertaking that the check is good then and shall continue good, and this agreement is as binding on the bank as its notes of circulation, a certificate of deposit payable to the order of the depositor, or any other obligation it can assume. The object of certifying a check, as regards both parties, is to enable the holder to use it as money. The transferee takes it with the same readiness and sense of security that he would take the notes of the bank. It is available also to him for the purposes of money. Thus it continues to perform its important functions, until in the course of business it goes back to the bank for redemption and is extinguished by payment. It can not be doubted that the certifying bank intended these consequences, and it is liable accordingly. To hold otherwise would render these important securities only a snare and delusion." 10 Wallace, 647. See, also, United States Bank vs. Bank of Georgia, 10 Wheat. 333.

The plaintiff relies upon the cases of McCall vs. Corning, 3 An. 409, and Espy vs. Bank of Cincinnati, 18 Wall. 604, as conclusively settling the right to recover. Neither of these cases was like the one under consideration. In the case of McCall vs. Corning et al. a forged draft had been sold to Britton & Co., who transferred it to Corning et al. *before acceptance.* They had parted with their money, not on the credit of the drawee's acceptance, but on the faith they had in the drawer and the payee and indorser.

In the case of Espy there was no written certification on the check. The cashier of the bank had verbally told the clerk of Espy, Heidelbach & Co., the payee, that "it is all right; send it through the Clearing-

House." In this connection the court used the following language: "It is also to be considered that the bank was not asked to certify it in the usual way by indorsing it good, and that the party who asked information was the one whose name was in the check as payee. We do not propose to decide here what would have been the legal effect in the present case if the bank officer had, under precisely these circumstances, been requested to indorse the check as good, and had done so, affixing his name or his initials in the ordinary way." 18 Wallace, pp. 619, 620. This extract is sufficient to show that the question involved in this case was not decided in Espy vs. Bank of Cincinnati.

The plaintiff also relies upon the case of the Marine National Bank vs. the National City Bank, recently decided by the Court of Appeals for New York. That case differs from the present case in this, the party who had the check certified, and to whom, subsequently, payment was made, was the same whose name was in the check as payee; in the present case the Citizens' Bank was not a party to the check. See, also, the cases of Farmers' Bank vs. Butchers' Bank, 16 N. Y. 125; First National Bank vs. Leach, 52 N. Y. 350; Cooke vs. State National Bank, 52 N. Y. 115.

It is therefore ordered and adjudged that the judgment of the lower court be reversed, and that there be judgment in favor of the defendant, rejecting the plaintiff's demand with costs.

Rehearing refused.

Mr. Justice Wyly dissents, and reserves the right to file his reasons.