(59 App. Div. 103.)

CONTINENTAL NAT. BANK OF NEW YORK v. TRADESMEN'S NAT.
BANK OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

BANKS AND BANKING—RAISED DRAFT—CERTIFICATION—LETTER OF ADVICE—
    NEGLIGENCE—RECOVERY OF LOSS.
        A bank in Philadelphia, which was a depositor of the plaintiff, and
    customarily drew drafts on plaintiff, and sent daily letters of advice as to
    the number, amounts, and payees of such drafts, drew a draft on the
    plaintiff bank on June 7th for $76; and on June 13th it was presented
    to plaintiff for certification after it had been raised to $7,660, and its
    date changed to June 12th, and was duly certified by plaintiff's cashier,
    though at the time the advice as to the amount and date of the draft
    was on the cashier's desk. Subsequently the defendant bank cashed
    the draft, without knowledge of the fraud, and it passed through the
    clearing house and was accepted and paid by plaintiff. Held, that defend-
    ant was not liable to plaintiff for the amount the draft was raised, as for
    money had and received.

Appeal from trial term, New York county.

Action by the Continental National Bank of New York against the
Trademen's National Bank of New York. From a judgment in favor
of defendant, and from an order denying a new trial, plaintiff appeals.
Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-
BERG, JENKS, and SEWELL, JJ.

George W. Wickersham, for appellant.
Charles E. Rushmore, for respondent.

HIRSCHBERG, J. The disposition of this appeal would involve
no difficulty, but for one remark of the learned trial justice to the
jury. On a previous trial a verdict was rendered in favor of the
plaintiff by direction of the court. The appellate division in the First
department reversed the judgment entered on that verdict, and the
luminous and elaborate opinion then written settled the law of the
case, so that on a new trial it was only necessary to ascertain from
the jury whether the plaintiff was negligent in paying and retaining
the draft on June 14th, and whether the defendant paid its fraudu-
lent depositor in reliance thereon. Continental Nat. Bank v. Trades-
men's Nat. Bank, 36 App. Div. 112, 55 N. Y. Supp. 545. The de-
fendant's liability to refund the money in this action, so far as af-
fected by the previous certification of the raised draft by the plaintiff
on June 13th, regarded as an act of negligence in and by itself, was
not considered by the court at all. Mr. Justice Ingraham said (page
114, 36 App. Div., and page 546, 55 N. Y. Supp.):

"The question as to the right of the plaintiff to recover back this money
may be viewed in two aspects: First, with reference to its liability on the
certification of the draft on June 13th; and, second, as to the right to recover
the amount paid to the defendant,—such payment having been made on June
14th, and in the regular course of business. In the view we have taken of
this second aspect of the question, it is unnecessary to discuss the obligation
of the plaintiff to the defendant, the holder of the draft, in consequence of
the certification on June 13th."

On the second trial, nevertheless, the learned trial justice said to
the jury:

"The question seems to me to be narrowed down to a single one, and that is whether the Continental National Bank, at the time that they certified the draft of the Philadelphia Bank drawn upon it, were guilty of culpable negligence in doing so. That appears to be about the question involved in this case. And that is, as I understand, the question as stated by Mr. Justice Ingraham in his opinion in this case on appeal."

The defendant excepted specifically to this portion of the charge, but it was not withdrawn or modified in any way; nor was the jury instructed that the plaintiff's negligence in certifying the draft could only operate to defeat a recovery when taken in connection with the subsequent negligence charged, viz. that of paying the draft when finally presented. The court did, indeed, correctly charge the jury on the question of the culpable negligence of the plaintiff in receiving the draft on June 14th, retaining and paying it without examination and verification, notwithstanding it had in its possession ample proof of the fraud, and on the question of the payment by the defendant to its depositor, relying upon such acceptance and payment by the plaintiff. The evidence is sufficient to sustain a finding by the jury in the defendant's favor upon these questions, but inasmuch as a finding by the jury adverse to the defendant on these questions would, under the charge, be still consistent with a finding in its favor on the question of the original certification, and the verdict may accordingly have been based solely thereon, the question of law not considered on the former appeal must be determined now.

It is unnecessary to recapitulate the facts. They are set forth in detail in the opinion in the First department. The drawer of the draft was the Philadelphia National Bank, one of the plaintiff's depositors, accustomed to draw almost daily, and invariably notifying the plaintiff of the fact. The notifications were in the form of daily letters of advice, containing a list of the drafts, with serial number, date, amount, and name of payee. The one in question was drawn and dated June 7, 1894, payable to Henry F. Thompson, in the sum of $76, and bore the serial number 2,269. Written information of the fact was at once conveyed by mail to the plaintiff, and received by it. On June 13th the draft, having meanwhile been raised to $7,660, and its date changed to June 12, 1894, was presented to the plaintiff for certification, and promptly certified. The written information of the fact of the fraud deducible from the advices received from Philadelphia between and including June 7th and 13th was on the bookkeeper's desk at the time, but was unexamined and disregarded. The draft was deposited by Thompson with the defendant, and, after passing through the clearing house and being accepted and paid by the plaintiff, was drawn against by Thompson, with the exception of a small balance still remaining in defendant's hands. The action is brought to recover the difference between the amount of the draft as raised and as originally drawn, as money had and received by the defendant from the plaintiff by mistake.

While the precise question does not appear to have been decided in this state, the court of appeals has come so close to it in the final decision in Clews v. Bank, 114 N. Y. 70, 20 N. E. 852, that, in view of the manifest injustice of any other result, I have no hesitation in applying it to the support of this judgment. There a draft for

$254.50 was certified by the bank on which it was drawn, and was thereafter raised to $2,540, and the date altered. Clews, before receiving it as good, sent a messenger to the bank to inquire whether the certification was good. The bank had, of course, knowledge of the date and amount of the original draft in its certification book, and had also received a letter notifying it that the draft had been lost, and to stop payment. Without making recourse to this information, the teller replied "Yes" to the inquiry; and Clews, having thereupon taken the draft in payment for bonds sold, was permitted to recover from the bank, not upon the certification, but for actionable negligence. I can see no difference in principle between that case and the case of a draft presented to the bank after it has been raised, and then certified by the bank with full knowledge, or the means of knowledge, of the fraud. Had Clews received the raised draft uncertified, and had he then sent it to the bank for certification before accepting it, its certification by the bank without examination would have presented the conditions existing in the case at bar; but it would be impossible to say that such deliberate certification without verifying the integrity of the draft would be any less an act of culpable negligence, or less calculated to betray the holder to his loss, than would be the utterance of a hurried "Yes" in response to an inquiry at the window. And the negligence of the plaintiff in originally certifying the draft in question on June 13th, with the correspondence before it which would have disclosed the fraud, is certainly not in any degree less culpable than the recognition and payment of it on the following day, when the act may be assumed to have been in reliance on the fact that it bore the unquestionably genuine certification of the bank's own officer. On any other theory the consequences of plaintiff's negligence will be visited upon the defendant, a party wholly innocent and free from blame. The defendant asserts that it did not actually part with its money until after the plaintiff had ratified its original certification by subsequent recognition and payment of the draft, and if, therefore, the act of certification be regarded merely as a "mistake," it was one which resulted in loss to an innocent holder before its discovery. "The object of certifying a check," said Mr. Justice Swayne in Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 648, 19 L. Ed. 1019, "as regards both parties, is to enable the holder to use it as money. The transferee takes it with the same readiness and sense of security that he would take the notes of the bank. It is available, also, to him for all the purposes of money." When an innocent holder parts with value on the faith of such a certification, the situation arises which was suggested by Judge Rapallo in National Bank of Commerce v. National Mechanics' Banking Ass'n, 55 N. Y. 211, 216:

"If the defendant had shown that it had suffered loss in consequence of the mistake committed by the plaintiff,—as, for instance, if, in consequence of the recognition by the plaintiff of the check in question, the defendant had paid out money to its fraudulent depositor,—then, clearly, to the extent of the loss thus sustained, the plaintiff should be responsible."

In that case the check was altered after its certification. In Louisiana Nat. Bank of New Orleans v. Citizens' Bank of Louisiana,

28 La. Ann. 189, it was held that a bank certifying a raised check without knowledge of the forgery was primarily liable to any innocent holder for value, on the principle that he whose act has caused a loss should bear the loss.   It is conceded that the contract of cer. tification extends only to the genuineness of the signature, and the amount and availability of the fund upon which it is drawn.   The reason underlying this limitation is that the certifying bank has superior, if not exclusive, information in these respects, while as to the body of the instrument others have equal facilities for judging. · But, where the bank does possess information that the body is a forgery, the reason for the rule ceases, and it is difficult to see why the bank should be protected against the consequences of its own negligence in setting the fraudulent draft in circulation.   "The ordinary rules limiting the warrant of a certification to signature and funds only apply when the bank has no knowledge of the history of the instrument, and of the facts connected with the drawing, delivery, indorsement," etc.   1 Morse, Banks (3d Ed.) § 414.   In Bank v. Eltinge, 40 N. Y. 391, the plaintiff's means of ascertaining the truth were not exclusive.   "It cannot be denied," said the court (page 395), "that either party might have made inquiry, and would probably have learned the actual facts.   *   *   *   This course, however, was open to either party, and there is no more negligence in failing to obtain the knowledge by one party than the other.   The defendants were equally bound with the plaintiffs to possess the knowledge, and, if the want of it is a ground of complaint, are equally censurable with the plaintiffs for not possessing it."   In Mayer v. Mayor, etc., 63 N. Y. 455, it was held that the general rule that money paid under a mistake of a material fact may be recovered back, although there was negligence on the part of the person making the payment, is subject to the qualification· that the payment cannot be recalled when the position of the party receiving it has been changed in consequence of the payment, and it would be inequitable to allow a recovery.   The person making the payment must in that case bear the loss occasioned by his own negligence.   To the like effect is National Park Bank of New York v. Steele & Johnson Mfg. Co., 58 Hun, 81, 11 N. Y. Supp. 538, cited by appellant. There a promissory note, payable to defendant's order, for goods sold, was certified by the plaintiff, and thereafter transferred to the Tradesmen's National Bank, and by it credited to the payee.   The next day the note was paid through the clearing house, the proceeds received by the Tradesmen's National Bank, and by it paid over to the defendant.   The certification was made by the assistant teller of the bank without authority, and the amount was in excess of the maker's account; and the court held that, while the certification was a careless act, that circumstance was not sufficient to prevent a recovery from the defendant, inasmuch as it had. not changed its condition in any respect by reason of the certification of the note and the payment of the money upon it.   The court said in reference to the Tradesmen's National Bank that, "as it had paid over the money to the defendant, its agency in the transaction had ceased, and it was not liable to refund the money to the plaintiff."   I think the

facts bring the case now under consideration fairly within the exceptions to the rule permitting a recovery of money paid under a mistake of fact. Where a party pays money by reason of a mistake arising solely from a negligent failure to avail himself of special knowledge at his command, he ought not to be permitted to recover it from the one to whom it has been paid, where the latter must in such case sustain the entire loss because he, in turn, has parted in good faith with the money on the credit of, and in reliance upon, such mistake.

In the view taken, it becomes unnecessary to consider the exceptions bearing upon that portion of the charge relating to the rules of the clearing house, and the negligence predicated on the transations of June 14th. They have been examined, however, and nothing is found affecting the validity of the proceedings.

The judgment and order should be affirmed, with costs. All concur, except SEWELL, J., taking no part.